**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SEATON SHAVER JONES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 26-879** |
| **TIMOTHY SOIGNET, ET AL.** | **SECTION "I"(1)** |

## AMENDED REPORT AND RECOMMENDATION

Plaintiff, Seaton Shaver Jones, a Louisiana pretrial detainee, filed this *pro se* and *in forma pauperis* civil action pursuant to 42 U.S.C. § 1983. In his complaint, Jones named as defendants the Terrebonne Parish Sheriff's Office, Sheriff Timothy Soignet and "Arresting Officers."[1] In his Statement of Claim, Jones asserts, without corrections to grammar or spelling, as follows:

> At 1-5-26 on Scott 2D in front of Kim's Store I was in handcuffs punch in the jaw and neck area slamed to the ground for no reason and knee in neck on side of the truck.[2]

Jones seeks monetary relief.[3]

To better understand the factual bases of Jones's claims, the Court held a Spears hearing in this matter on June 23, 2026.[4] See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). The purpose of a Spears hearing is to dig beneath the conclusory allegations of a *pro se* complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Id. at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005–06 (5th Cir. 1998). The information received at such an evidentiary hearing is in the nature of an amended complaint or more definite statement under Rule 12(e). Jackson v. Vannoy, 49 F.3d

[1] Rec. Doc. 4 at 1, 4.
[2] Id. at 4.
[3] Id. at 5.
[4] Rec. Doc. 8.

175, 176 (5th Cir. 1995); Wilson v. Barrientos, 926 F.2d 480, 482 (5th Cir. 1991) (citing Spears, 766 F.2d at 181–82); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). Allegations made at the Spears hearing supersede the allegations of the plaintiff's complaint. Riley v. Collins, 828 F.2d 306, 307 (5th Cir. 1987).

At the hearing, Jones testified that, in early January 2026, two Terrebonne Sheriff's Office officers detained him for questioning regarding an alleged domestic abuse incident. Jones did not know the names of the officers and had not seen a copy of the related police report, but recalled that one officer was male and the other was female. Jones testified that he was handcuffed and brought to the side of the police car. He claimed that the male officer tried to make him "get on the ground for nothing, when he could have just put [him] in a car." Jones claimed the male officer ended up punching him in the jaw and neck, slammed him chest-first onto the ground, and then kneeled on the back of Jones's neck for approximately 40 seconds. Jones explained that, when he complained that the male officer's knee was on his neck, the male officer "tried to jump off."

Jones admitted that he was charged with domestic abuse battery, resisting arrest, possession of marijuana, and violating his parole. He, however, was adamant that he "didn't even resist them" and that he had not tried to run from the officers.

Jones testified that he was medically examined at the jail the same evening of his arrest. He admitted that medical staff asked him whether he had suffered any injuries, but Jones felt that they did not show any concern. Jones claimed he had a swollen eye for about one to two weeks after the incident. He claimed that his jaw pain resolved within two weeks. He explained that the nurses at the jail provided him Tylenol when he complained of pain, but he eventually chose to stop taking it because he felt that it did not provide relief. Jones claimed that he still suffers from back and neck pain.

Jones testified that, after the incident, he spoke to his girlfriend on the jail phone. According to Jones, his girlfriend spoke with the male officer after Jones's arrest. She told Jones that the male officer told her that, "we made him holler like a bitch."

Jones explained that he named Sheriff Soignet as a defendant because he is the head sheriff and he did not know the names of the arresting officers. Jones admitted that Soignet was not present at the scene of Jones's arrest and that he did not physically touch him at any time.

Jones testified that his criminal defense attorney, Atoundra Lawson, had not given him the related police report and body camera footage nor had she informed him of the identities of the officers. He testified to his belief that the charges would be dropped soon, although he did not provide any basis for that belief.

In connection with the Spears hearing, counsel for the Terrebonne Parish Sheriff's Office provided the Court with a copy of the January 8, 2026, police report related to Jones's arrest. A copy of the report was provided to Jones for his use in this proceeding and a redacted copy was filed in the record.[5]

According to the report, Corporal Paul Thibodeaux and Officer Daniela Dominguez attempted to question Jones about a domestic violence incident involving his girlfriend.[6] Jones tried to leave the scene, and also attempted to prevent Thibodaux from handcuffing him by moving his hands and arms.[7] Once detained, Thibodeaux walked Jones to the police unit, but, when Thibodeaux attempted to take Jones's phone, Jones "became very defensive, kicking away from [the officers] and yelling and thrashing his arms left to right."[8] Additionally, "Jones was not letting Cpl. Thibodeaux search him. During the struggle Cpl Thibodeaux escorted Jones to the ground,

---

[5] Rec. Docs. 8, 9, and 9-1.
[6] Rec. Doc. 9-1 at 5.
[7] Id.
[8] Id.

and he was finally able to search Jones."[9] Corporal Thibodeaux located a pocketknife in Jones's front pocket.[10] Corporal Thibodeaux suffered scratches on his arm and knee as a result of the incident.[11]

Jones was advised of his Miranda rights, waived them, and, when asked about the domestic incident with his girlfriend and her resulting injuries, claimed that " 'everything was alright' and that it was nothing" and that "she did that."[12] Jones was charged with resisting an officer in violation of La. Rev. Stat. § 14:108 and domestic abuse battery, pregnant victim, in violation of La. Rev. Stat. § 14:35.3.[13]

He was taken to the Jerry L. Larpenter Criminal Justice Center and booked.[14] A search of his person located suspected marijuana.[15] He was, therefore, additionally charged with taking contraband to/from a penal institution in violation of La. Rev. Stat. § 14:402.[16]

Given Jones's testimony and the police report related to Jones's arrest on January 8, 2026, the docket was amended to reflect Corporal Thibodeaux and Officer Daniela Dominguez as defendants.[17]

## I. Mandatory Screening Provisions

"There is no absolute right to be allowed to proceed in forma pauperis in civil matters; rather it is a privilege extended to those unable to pay filing fees when the action is not frivolous or malicious." Startti v. United States, 415 F.2d 1115, 1116 (5th Cir. 1969). Title 28 U.S.C. § 1915(e)(2) thus directs, in relevant part, that courts "shall dismiss [an in forma pauperis plaintiff's]

---

[9] Id.
[10] Id.
[11] Id.
[12] Id.
[13] Id. at 1, 3–6.
[14] Id. at 5–6.
[15] Id.
[16] Id. at 1, 3–6.
[17] Rec. Doc. 12.

case at any time" if the plaintiff's complaint fails to state a claim upon which relief may be granted or is determined to be frivolous.

In addition, because Jones is incarcerated, he is subject to the screening provisions of 28 U.S.C. § 1915A. That statute mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."[18] 28 U.S.C. § 1915A(a). Regarding such lawsuits, the statute provides:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

A claim is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). When making that determination, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the

[18] "As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (footnote, citation, and quotation marks omitted). The United States Supreme Court has held:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

## I. Analysis

Jones filed this action pursuant to 42 U.S.C. § 1983. In pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983. Accordingly, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

For the following reasons, even when Jones's complaint, as expounded by his Spears testimony, is liberally construed,[19] his federal civil rights claims against Terrebonne Parish Sheriff's Office, Sheriff Soignet, and Officer Dominguez are frivolous and/or fail to state a claim on which relief can be granted. Jones's excessive force claim against Corporal Thibodeaux should

[19] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

remain, but that claim must be stayed pending resolution of Jones's underlying criminal proceedings.

**A. Terrebonne Parish Sheriff's Office**

Jones's claim against the Terrebonne Parish Sheriff's Office fails on the face of the complaint. The Terrebonne Parish Sheriff's Office is not a proper defendant because it lacks capacity to sue or be sued as required by Rule 17(b) of the Federal Rules of Civil Procedure. An entity's capacity to be sued must be determined by reference to the law of the state in which the district court sits. Fed. R. Civ. P. 17(b). To possess such a capacity under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or a partnership." La. Civ. Code art. 24. The State of Louisiana grants no such legal status to any Parish Sheriff's Office. Liberty Mutual Insurance Co. v. Grant Parish Sheriff's Department, 350 So. 2d 236, 238–39 (La. App. 3d Cir.), writ refused, 352 So.2d 235 (La. 1977). Thus, the Terrebonne Parish Sheriff's Office is not a juridical person capable of being sued under § 1983. Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 283 (5th Cir. 2002) ("[A] sheriff's office is not a legal entity capable of being sued...."); see also Causey v. Parish of Tangipahoa, 167 F.Supp.2d 898, 904 (E.D. La. 2001); Ruggiero v. Litchfield, 700 F. Supp. 863, 865 (M.D. La. 1988). Jones's claim against the Terrebonne Parish Sheriff's Office should therefore be dismissed.

**B. Sheriff Timothy Soignet**

Jones also named Sheriff Soignet as a defendant. As noted, at the hearing, Jones admitted that Sheriff Soignet was not present at the scene of his arrest. He testified he named Soignet as a defendant simply because "he is the head sheriff."

The United States Fifth Circuit Court of Appeals has held: "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to a constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citations omitted). Moreover, "[p]ersonal involvement is an essential element of a civil rights cause of action," Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983), and such involvement must be specifically alleged. Here, Jones does not allege any facts to establish that Sheriff Soignet was directly involved in his arrest and, in fact, admits that he was not involved. The failure to set forth any facts to suggest that Soignet was personally involved in any constitutional violation precludes Jones's effort to state a claim against him.

It appears Jones seeks to hold Sheriff Soignet liable for the actions of the officers who arrested him. Sheriff Soignet, however, may not be held responsible under a theory of *respondeat superior* under § 1983, based on a claim that personnel under his supervision caused his injury. Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996); accord Field v. Corr. Corp. of Am. Inc., 364 F. App'x 927, 929 (5th Cir. 2010). A supervisory official may be held liable for his subordinates' actions under § 1983 only if the official implemented an unconstitutional policy that causally resulted in the injury. See Monell v. Dep't of Soc. Servs., 436 U.S. at 691–95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)). Here, Jones does not allege that an official policy implemented by Soignet caused his alleged injury.

Accordingly, Jones's federal civil rights claims against Sheriff Soignet should be dismissed.

**C. Officer Dominguez and Corporal Paul Thibodeaux**

To the extent that Jones intended to assert a federal claim against Officer Dominguez, he fails to allege any facts supporting an allegation that she violated his constitutional rights. He fully admitted that the male officer, i.e., Corporal Thibodeaux, is the officer who used the force against him and allegedly harmed him. As Jones fails to allege sufficient facts to show that Officer Dominguez was personally involved in the use of force incident, he has failed to state a claim against her.

Turning to Jones's claim against Corporal Thibodeaux, when a plaintiff alleges excessive force during an arrest, "the federal right at issue is the Fourth Amendment right against unreasonable seizures." Tolan v. Cotton, 572 U.S. 650, 656 (2014) (citation omitted). "[*A*]*ll* claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Graham v. Connor, 490 U.S. 386, 395 (1989) (emphasis in original).

Under Heck v. Humphrey, 512 U.S. 477 (1994), a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that "violation arose from the same facts attendant to the charge for which he was convicted, unless he proves 'that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' " Bush v. Strain, 513 F.3d 492, 497 (5th Cir. 2008) (quoting Heck, 512 U.S. at 486–87). "[A] state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - *if*

success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81–82 (2005) (emphasis in original). Therefore, Heck applies to a prisoner's claims, whether he seeks monetary, injunctive, or declaratory relief. See Edwards v. Balisok, 520 U.S. 641, 648 (1997) (extending Heck to bar a prisoner's claim for money damages and declaratory relief challenging disciplinary hearing procedures); VanBuren v. Walker, 841 F. App'x 715, 716 (5th Cir. 2021) (recognizing Heck bar to "any injunctive relief" tied to habeas claim brought under § 1983).

"Although the Heck principle applies to § 1983 excessive force claims, the determination of whether such claims are barred is analytical and fact-intensive, requiring [the Court] to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." Bush, 513 F.3d at 497. Stated differently, the Court should determine whether the excessive force claim is "conceptually different than his conviction ... such that 'a successful suit on the former would not necessarily imply the invalidity of the latter.' " Ballard v. Burton, 444 F.3d 391, 400 (5th Cir. 2006) (citation omitted).

For example, if the factual basis for a plaintiff's excessive force claim is "temporally and conceptually distinct" from the facts underlying the crime charged, the claim would not be barred by Heck, and a stay would not be required. Id. at 498. On the other hand, "when there is no temporal and conceptual distinction between the factual basis for the conviction and the excessive force claim, that is, when the complained of use of force is applied during or simultaneously with the arrest, Heck applies." Price v. City of Rayne, No. 13-0790, 2016 WL 866945, at *3 (W.D. La. March 3, 2016) (citations omitted).

The Supreme Court applied a modified version of Heck to pretrial detainees in Wallace v. Kato, 549 U.S. 384, 393–94 (2007). In Wallace, the Court explained that, if a pretrial detainee files civil rights claims related to the validity of a pending criminal proceeding, the best practice is for the district court to stay the civil rights action until the pending criminal case is resolved to determine the impact of the Heck limitations. Wallace, 549 U.S. at 393–94; see Mackey v. Dickson, 47 F. 3d 744, 746 (5th Cir. 1995) (finding stay of pretrial § 1983 challenges to be the best practice). The court in Wallace explained:

> If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, Heck will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.

Wallace, 549 U.S. at 393–94 (citations omitted).

In this case, Jones has a pending charge for resisting an officer.[20] Resisting an officer as defined under Louisiana law includes elements of resistance, violence, and danger to the officers. La. Rev. Stat. § 14:108. It appears that Jones's resisting charge stems from his actions when Corporal Thibodeaux attempted to handcuff him and conduct a search incident to the arrest.[21] Therefore, it would not appear that Corporal Thibodeaux's use of force was "temporally or conceptually distinct" from Jones's criminal charge. DeLeon v. City of Corpus Christi, 488 F.3d 649, 656–57 (5th Cir. 2007). Given that the alleged use of force and subsequent injuries occurred during an ongoing series of events in conjunction with the alleged resisting, a stay is proper under Wallace until such time as the applicability of Heck can be properly addressed after disposition of the relevant, pending charge of resisting an officer. See Arnold v. Town of Slaughter, 100 F. App'x

---

[20] Rec. Doc. 9-1 at 1, 3–6.
[21] Id. at 5.

321, 323 (5th Cir. 2004) (where a plaintiff alleged that he did nothing wrong and was viciously attacked for no reason, his claim was barred because it squarely challenged the factual determination that underlay his conviction for resisting an officer); Drummer v. Joseph P. Lopinto, III, et al., No. 25-1010, 2025 WL 4945196, at * (E.D. La. Aug. 18, 2025) (claims of excessive force warranted a Wallace stay pending resolution of plaintiff's criminal charges for flight from and officer and resisting an officer), adopted, 2025 WL 2799060 (E.D. La. Oct. 2, 2025).

Accordingly, Jones's excessive force claim against Captain Thibodeaux cannot proceed and should be stayed until the conclusion of his underlying criminal proceedings.

## RECOMMENDATION

**IT IS RECOMMENDED** that Seaton Shaver Jones's federal civil rights claims against the Terrebonne Parish Sheriff's Office, Sheriff Soignet, and Officer Daniela Dominguez be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Jones's federal civil rights claim for excessive force against Corporal Paul Thibodeaux be **STAYED**.

**IT IS FURTHER RECOMMENDED** that the Clerk of Court marks this action **CLOSED** for statistical purposes. Furthermore, the Court should order that, within 60 days of finality of Jones's conviction or upon disposition of the charge of resisting an officer in his favor, Jones may move to reopen the matter for further proceedings consistent with Heck v. Humphrey, 512 U.S. 477 (1994). Jones should be instructed that failure timely to file the motion to reopen could waive his opportunity to proceed with this civil action.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); see Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 10th day of August, 2026.

Janis van Meerveld

**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**